2 F.3d 1149
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Patsy OLIVETO; Judy Oliveto, his wife,
Plaintiffs-Appellees,
v.
MCELROY COAL COMPANY; Randy DeBolt, Defendants-Appellants,
and
Consolidation Coal Company, Defendant.
Patsy Oliveto; Judy Oliveto, his wife,
Plaintiffs-Appellants,
v.
McElroy Coal Company; Randy DeBolt; Consolidation Coal
Company, Defendants-Appellees.
 Nos. 92-2326, 92-2569.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 9, 1993.
Decided: August 11, 1993.
 
 Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (CA-89-67-W-S)
 Larry Wayne Blalock, Jackson & Kelly, New Martinsville, West Virginia, for Appellants.
 David Allen Jividen, Bordas, Bordas & Jividen, Wheeling, West Virginia, for Appellees.
 Jennifer Z. Cain, Jackson & Kelly, New Martinsville, West Virginia, for Appellants.
 James B. Stoneking, Bordas, Bordas & Jividen, Wheeling, West Virginia, for Appellees.
 N.D.W.Va.
 AFFIRMED.
 Before RUSSELL, Circuit Judge, G. Ross ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 McElroy Coal Company (or its predecessor) employed Patsy Oliveto for over 30 years. By all accounts Oliveto's work record was excellent. Oliveto's employment with McElroy ended on December 7, 1988, when he was terminated for allegedly violating safety rules. At the time of his termination, Oliveto was 57 years old and was the oldest section foreman working at the mine.
 
 
 2
 On January 31, 1989, Oliveto filed an age discrimination charge with West Virginia's Human Rights Commission. He also filed a charge with the federal Equal Employment Opportunity Commission. On March 10, 1989, Oliveto voluntarily withdrew his state-law charge. After the EEOC processed Oliveto's claim to conclusion he brought suit in the Circuit Court of Marshall County, West Virginia, alleging violations of the federal Age Discrimination in Employment Act and the West Virginia Human Rights Act. The defendants removed the lawsuit to the federal District Court for the District of Northern West Virginia.
 
 
 3
 After hearing the evidence, the jury returned a verdict in favor of Oliveto. The jury awarded Oliveto damages under both the ADEA and the West Virginia Human Rights Act for back pay, pay prospective to age 62, and lost benefits. The jury awarded damages for emotional distress under the West Virginia statute. The jury also found that the violation of the ADEA was willful.
 
 
 4
 On January 28, 1992, McElroy and DeBolt timely filed a motion for judgment as a matter of law and for amendment of judgment for the purpose of renewing their previous motions for directed verdict. The district court denied the motion on the issue of jurisdiction holding that Oliveto's short lived West Virginia administrative action did not deprive the court of subject matter jurisdiction. The court then granted the motion as to the willfulness of the violation finding that there was no evidence to support that verdict. Both parties appeal.
 
 I.
 
 5
 The West Virginia Human Rights Act, Chapter 5, Article 11 of the West Virginia Code, protects certain substantive human rights and sets out the administrative process designed to redress violations of the Act. In Price v. Boone County Ambulance Auth., 337 S.E.2d 913 (W. Va. 1985), the West Virginia Supreme Court held that a person could elect either to pursue the administrative remedy afforded by the Act or to bring an action in circuit court. Id . at 916. These options are mutually exclusive. Id. McElroy and DeBolt contend that under West Virginia law the mere act of filing a complaint with the West Virginia Human Rights Commission forever bars the option to file a lawsuit. The district court, in a well reasoned order, examined the pertinent West Virginia precedent and concluded that the West Virginia Supreme Court would not "hold that somehow Oliveto became irrevocably locked into the administrative process simply because he filed a claim which was shortly thereafter withdrawn on his own initiative." We agree.
 
 
 6
 The Human Rights Act contains the legislative directive that "[t]he provisions of this article shall be liberally construed to accomplish its objectives and purposes." W. Va. Code Sec. 5-11-15 (1967). In Price the court liberally construed the statute to free aggrieved persons from the strictures of an "administrative process [that] was not achieving its intended purpose." Price, 337 S.E.2d at 916. Having thus expanded a complainant's remedial options, we do not think that the West Virginia Supreme Court would now find that the law supports the narrow and draconian rule proposed by McElroy and DeBolt.
 
 
 7
 McElroy and DeBolt argue that the exclusivity language in Sec. 5-1113* bars any subsequent lawsuit, regardless of the circumstances, unless the West Virginia Human Rights Commission has issued a "right to sue" letter. As an initial matter, we note that the language relied on by the appellants predates the judicially created alternative remedy by some twenty years. Therefore, there can be no serious argument that the West Virginia legislature specifically intended this language to apply to the precise issue before us now. Indeed, in Price the West Virginia Supreme Court found that the same exclusivity language at issue today did not bar a civil lawsuit as an alternative to the administrative process. Furthermore, the West Virginia Supreme Court later said that "it is apparent upon reading the exclusivity provision as a whole that the legislature was principally concerned with preventing discrimination claims from being litigated under both the state human rights act and a local anti-discrimination law." Liller v. W. Va. Human Rights Comm'n, 376 S.E.2d 639, 645 (W. Va. 1988) (emphasis added). Stated more generally, the exclusivity language is intended to bar multiple recoveries. The statute is certainly not intended to trap the unwary in a morass of technicality.
 
 
 8
 In this case, the charge was filed with the Human Rights Commission and then withdrawn within a relatively short time and before any administrative action occurred. The administrative filing did not prejudice McElroy and Debolt in any way. Further more, the actions were, in fact, mutually exclusive: at no point were the administrative and judicial actions contemporaneous and there was only one recovery. We hold that under these circumstances the lawsuit was not barred by West Virginia law.
 
 II.
 
 9
 The jury found that McElroy and DeBolt's discrimination was willful under the law. The district court granted judgment as a matter of law to McElroy and DeBolt on this point. The court found that such a finding was not warranted by the evidence presented. We agree.
 
 
 10
 A court should grant a judgment as a matter of law only when the evidence is so clear that a reasonable jury could reach no other conclusion other than the one suggested by the moving party. Persinger v. Norfolk & Western Ry. Co., 920 F.2d 1185, 1189 (4th Cir. 1990). In making this determination, the court must view the evidence in the light most favorable to support the jury verdict. Id. While the court does not weigh the evidence, there must be more than a mere scintilla of evidence to defeat the motion. Id.
 
 
 11
 The Age Discrimination in Employment Act provides for an additional damage recovery when the violation was "willful". 29 U.S.C. Sec. 626(b). A violation is "willful" when an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Trans World Airlines v. Thurston, 469 U.S. 111, 126 (1985). Willfulness must be something more than a "simple violation of the statute." Gilliam v. Armtex, Inc., 820 F.2d 1387, 1390 (4th Cir. 1987).
 
 
 12
 Oliveto makes two arguments that the jury's determination is supported by the evidence. First, Oliveto argues that the evidence shows that the stated reason for his termination, a safety violation, was a mere pretext for the discrimination. While the evidence clearly supports the assertion that the reason for the termination was pretextual, this is evidence of the fact of the discrimination, not of the willfulness of the discrimination. Second, Oliveto argues that the evidence of manipulation of statistical data by the defendants is enough to show willfulness. The record shows that these manipulations occurred after Oliveto filed his lawsuit and, therefore, after McElroy was on notice of the claim. Without more, the mere fact of post-termination statistical manipulation by McElroy is not evidence beyond a scintilla that McElroy and DeBolt acted willfully at the time of the violation.
 
 
 13
 We have carefully reviewed the record in the light most favorable to Oliveto. We find that there was insufficient evidence to support a finding that the discrimination was willful. The district court was correct in granting a judgment as a matter of law on this issue.
 
 III.
 
 14
 For the reasons stated above, we affirm the judgment of the district court.
 
 AFFIRMED
 
 15
 WILLIAMS, Senior District Judge, dissenting in part and concurring in part:
 
 
 16
 I respectfully dissent to Part I. of the majority opinion.
 
 
 17
 The forum option created by the West Virginia Human Rights Act must be exercised at the beginning and not along the way. The lower court's ruling and the majority's affirmance distorts the precision of this jurisdictional stricture.
 
 
 18
 Whether a court has jurisdiction is a free standing issue and should never be encumbered by a prejudice element being grafted to its trunk. I would dismiss the West Virginia Human Rights Act claim for lack of jurisdiction.
 
 
 
 *
 The section reads, in pertinent part, as follows:
 5-11-13 Exclusiveness of remedy; exceptions.
 (a) Except as provided in subsection (b), nothing contained in this article shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this state relating to discrimination because of race, religion, color, national origin, ancestry, sex, age, blindness or handicap, but as to acts declared unlawful by section nine [Sec. 5-11-9] of this article the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such grievance without resorting to the procedure provided in this article, he may not subsequently resort to the procedure herein. In the event of a conflict between the interpretation of a provision of this article and the interpretation of a similar provision contained in any municipal ordinance authorized by charter, the interpretation of the provision in this article shall apply to such municipal ordinance.
 (b) Notwithstanding the provisions of subsection (a) of this section, a complainant may institute an action against a respondent in the county wherein the respondent resides or transacts business at any time within ninety days after the complainant is given notice of a right to sue pursuant to this subsection (b) or, if the statute of limitations on the claim has not expired at the end of such ninety-day period, then at any time during which such statute of limitations has not expired. If a suit is filed under this section the proceedings pending before the commission shall be deemed concluded....